IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

CYNTHIA A. E.,

                        Plaintiff,

              v.                                Civil Action No.
                                                5:22-CV-0974 (MAD/DEP)


COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.

_____

APPEARANCES:                        OF COUNSEL:

FOR PLAINTIFF

OLINSKY LAW GROUP                   CAEDEN SEHESTED, ESQ.
250 South Clinton Street, Suite 210  HOWARD D. OLINSKY, ESQ.
Syracuse, NY 13202

FOR DEFENDANT

SOCIAL SECURITY ADMIN.              GEOFFREY M. PETERS, ESQ.
OFFICE OF GENERAL COUNSEL
6401 Security Boulevard
Baltimore, MD 21235


DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE


REPORT AND RECOMMENDATION

        Plaintiff has commenced this proceeding, pursuant to 42 U.S.C. §

405(g), to challenge a determination of the Commissioner of Social

Security ("Commissioner") finding that she was not disabled during the relevant period and, accordingly, is ineligible for the disability insurance benefits ("DIB") for which she has applied. The matter has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b) and Northern District of New York Local Rule 72.3. For the reasons set forth below, I recommend a finding that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence.

I.   BACKGROUND

Plaintiff was born in December of 1967, and is currently fifty-five years of age. She was fifty-two years old on May 24, 2020, the date upon which she allegedly became disabled due to her medical conditions. Plaintiff measures five feet and three inches in height, and weighed approximately one hundred and thirty pounds during the relevant period. Plaintiff reports that she lives by herself in a trailer in Homer, New York, although during at least part of the relevant period she had custody of her three young grandchildren.

In terms of education, plaintiff reports that although she did not graduate from high school, she obtained her GED and a certificate in cosmetology. She worked most recently as an administrative assistant, but

was taken out of work by her physician because of her anxiety and panic attacks and eventually lost her job as a result.

Plaintiff alleges that she suffers primarily from various mental impairments causing panic attacks, depression, and anxiety symptoms, although she also reported difficulty with headaches.  As is relevant to this action, plaintiff has treated for her impairments with sources at the Family Health Network in Cortland, New York.

At the administrative hearing related to her claim for disability benefits, held on August 3, 2021, plaintiff testified that she experiences difficulty working and functioning primarily due to anxiety and panic attacks. Plaintiff reported that it is difficult for her to leave the house even to go to the grocery store, although she does try to take her three grandchildren on outings that will not involve being around too many people.  She stated that she has custody of her three grandchildren, all of whom experience behavioral issues, and she managed their homeschooling during the COVID-19 pandemic.  Plaintiff further testified that she has difficulty concentrating, remembering things, finishing tasks in a timely manner, and finding motivation to perform chores around the house.  According to the plaintiff, when she has a panic attack, she needs to remove herself from the situation that has caused it.  She further reported that she experiences

poor sleep, and that her anxiety symptoms related to the death of her son

cause her to worry excessively about her other family members.

## II.    PROCEDURAL HISTORY

### A.    Proceedings Before the Agency

Plaintiff applied for DIB payments under Title II of the Social Security

Act on July 30, 2020.[1]  Administrative Law Judge ("ALJ") Jennifer Gale

Smith held an administrative hearing related to that application on August

3, 2021, and subsequently issued a decision on August 20, 2021, finding

that plaintiff was not disabled.  That opinion became a final determination of

the agency on July 22, 2022, when the Social Security Appeals Council

denied plaintiff's request for review of the ALJ's decision.

### B.    The ALJ's Decision

In her decision, ALJ Gale Smith applied the familiar, five-step

sequential test for determining disability.  At step one, she found that

plaintiff has not engaged in substantial gainful activity during the relevant

period.  The ALJ next found at step two that plaintiff suffers from severe

impairments that impose more than minimal limitations on her ability to

perform basic work functions, including a depressive disorder, an anxiety

---

[1]    Plaintiff is insured for disability benefits under Title II through December 31, 2025.

disorder, a panic disorder, and posttraumatic stress disorder ("PTSD").  As part of her step two finding, ALJ Gale Smith additionally found that plaintiff's alleged headache disorder does not rise to the level of a severe impairment.

At step three, ALJ Gale Smith examined the governing regulations of the Commissioner setting forth presumptively disabling conditions (the "Listings"), *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, and concluded that plaintiff's conditions do not meet or medically equal any of the listed conditions set forth in those regulations, specifically considering Listings 12.04, 12.06, and 12.15.

ALJ Gale Smith next surveyed the available record evidence and concluded that, during the relevant period, plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, with the following exceptions:

> she should work in a low stress job defined as occasional decision-making, occasional judgment required and occasional changes in the work setting. The claimant should work at goal-oriented work rather than production pace rate work. The claimant should have occasional contact with coworkers and supervisors and no public contact.

ALJ Gale Smith went on to step four and concluded that plaintiff is unable to perform any of her past relevant work.  The ALJ then proceeded

to step five and, after eliciting testimony from a vocational expert, found that plaintiff remains able to perform available work in the national economy, citing as representative positions the jobs of table worker, checker I, and hand launderer.  Based upon these findings, ALJ Gale Smith determined that plaintiff was not disabled at the relevant times.

C.    This Action

Plaintiff commenced this action on September 15, 2022.[2]  In support of her challenge to the ALJ's determination, plaintiff argues that (1) the ALJ's RFC finding is not supported by substantial evidence in that she failed to explain her reasons for diverging from various limitations contained within the opinions of the nonexamining state agency medical consultants despite finding those opinions to be persuasive, and failed to appropriately assess the opinion of the consultative examining psychologist.  Dkt. No. 13.

Oral argument was conducted in this matter, by telephone, on October 12, 2023, at which time decision was reserved.

III.   DISCUSSION

A.    Scope of Review

---

[2]    This action is timely, and the Commissioner does not argue otherwise.  It has been treated in accordance with the procedures set forth in the Supplemental Social Security Rules and General Order No. 18.  Under those provisions, the court considers the action procedurally as if cross-motions for judgment on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

A court's review under 42 U.S.C. § 405(g) and 1383(c)(3) of a final decision by the Commissioner is subject to a "very deferential" standard of review, and is limited to analyzing whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Where there is reasonable doubt as to whether an ALJ has applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987). If, however, the correct legal standards have been applied, and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision will withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact. *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 390, 401 (1971) (quoting

7

*Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *accord, Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003).  To be substantial, there must be "more than a mere scintilla" of evidence scattered throughout the administrative record.  *Richardson*, 402 U.S. at 401 (internal quotation marks omitted); *Williams*, 859 F.3d at 258.  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis on the substantiality of the evidence must also include that which detracts from its weight."  *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *Mongeur v. Hechler*, 722 F.2d 1033, 1038 (2d Cir. 1983)).

  B. <u>Disability Determination: The Five-Step Evaluation Process</u>

  The Social Security Act ("Act") defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).  In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [be] of
> such severity that he is not only unable to do his
> previous work but cannot, considering his age,
> education, and work experience, engage in any other

8

kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five-step evaluative process to be employed in determining whether an individual is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. The first step requires a determination of whether the claimant is engaged in substantial gainful activity ("SGA"); if so, then the claimant is not disabled, and the inquiry need proceed no further. *Id.* §§ 404.1520(b), 416.920(b). If the claimant has not worked at a level constituting SGA, then the second step involves an examination of whether the claimant has a severe impairment or combination of impairments that significantly restricts his or her physical or mental ability to perform basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations. *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1. If so, then the claimant is "presumptively disabled." *Martone v. Apfel*, 70 F. Supp. 2d 145, 149 (N.D.N.Y. 1999) (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's RFC precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If it is determined that it does, then as a final matter, at step five the agency must examine whether the claimant can do any other work. *Id.* §§ 404.1520(g), 416.920(g).

The burden of showing that the claimant cannot perform past work lies with the claimant. *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584. Once that burden has been satisfied, however, it becomes incumbent on the agency to prove that the claimant is capable of performing other available work. *Perez*, 77 F.3d at 46. In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills. *Ferraris*, 728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

C.    Analysis

Plaintiff argues that the ALJ erred in failing to rely to a greater extent on the opinion provided by consultative examiner Dr. Marisol Valencia-Payne. In support of her argument, plaintiff points in part to the fact that the state agency psychiatric consultants – whose prior administrative medical findings the ALJ purported to rely upon but failed to fully adopt

10

without adequate explanation – found such opinion to be consistent with the medical evidence in the record.  Dkt. No. 13, at 12-18.  She also argues more broadly that the ALJ failed to properly assess Dr. Valencia-Payne's opinion.  *Id.*

Because plaintiff's application was filed after March 27, 2017, this case is subject to the amended regulations regarding opinion evidence. Under those regulations, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s), . . . including those from your medical sources," but rather will consider whether those opinions are persuasive by primarily considering whether the opinions are supported by and consistent with the record in the case.  20 C.F.R. § 416.920c(a); *see* 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5853 (stating that, in enacting the new regulations, the agency was explicitly "not retaining the treating source rule").  An ALJ must articulate in his or her determination as to how persuasive he or she finds all of the medical opinions and explain how he or she considered the

supportability[3] and consistency[4] of those opinions.  20 C.F.R. §

416.920c(b).  The ALJ also may – but is not required to – explain how he or

she considered the other relevant enumerated factors related to the

source's relationship with the claimant, including the length of any

treatment relationship, the frequency of examinations by the source and the

purpose and extent of the treatment relationship, whether the source had

an examining relationship with the claimant, whether the source specializes

in an area of care, and any other factors that are relevant to the

persuasiveness of that source's opinion.  20 C.F.R. § 416.920c(c).

On October 27, 2020, consultative examiner Dr. Valencia-Payne

conducted a psychiatric examination of plaintiff, during which she observed

that plaintiff appeared cooperative and had a fair overall presentation,

although she did exhibit some tearfulness, sobbing, and crying during the

---

[3]     On the matter of supportability, the regulations state that "[t]he more relevant the
objective medical evidence and supporting explanations presented by a medical source
are to support his or her medical opinion(s) or prior administrative medical finding(s), the
more persuasive the medical opinion or prior administrative medical findings(s) will be."
20 C.F.R. § 416.920c(c)(1).

[4]     On the matter of consistency, the regulations state that "[t]he more consistent a
medical opinion(s) or prior administrative medical finding(s) is with the evidence from
other medical sources and nonmedical sources in the claim, the more persuasive the
medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. §
416.920c(c)(2).

session.  Administrative Transcript ("AT") at 459.[5]  In terms of pertinent

abnormalities, plaintiff reported having a depressed, anxious, frustrated,

hopeless, and confused mood, and was observed to have a depressed and

anxious affect, with generally intact attention, concentration and memory

despite some evident emotional distress that impacted her processing

speed.  AT 459-60.  She was also noted to have estimated average

intellectual functioning, good insight, and fair judgment.  AT 460.  Dr.

Valencia-Payne opined that plaintiff has no limitations in her abilities to

understand, remember or apply simple directions and instructions, use

reason and judgment to make work-related decisions, and be aware of

normal hazards and take appropriate precautions.  AT 460-61.  She further

opined that plaintiff has a mild limitation in her ability to maintain personal

hygiene and appropriate attire, a mild-to-moderate limitation in her ability to

understand, remember and apply complex directions and instructions, and

moderate-to-marked limitations in her abilities to interact adequately with

supervisors, coworkers and the public, sustain concentration and perform a

task at a consistent pace, sustain an ordinary routine and regular

attendance at work, and regulate emotions, control behavior and maintain

---

[5]    The administrative transcript is found at Dkt. No. 10, and will be referred to throughout this decision as "AT__."

well-being.  AT 461.  Dr. Valencia-Payne opined that these difficulties are caused by fatigue, distractibility, lack of motivation, and mental health concerns including symptoms of depression, anxiety, and PTSD.  AT 461.

The ALJ found Dr. Valencia-Payne's opinion to be somewhat persuasive, rationalizing that although it is supported by the findings from her own examination, it is not entirely consistent with the evidence in the overall record.  AT 18.  The ALJ found that no more than moderate limitations in any of the noted areas are warranted based on evidence that (1) although plaintiff was often observed to be tearful she was able to nonetheless communicate with her treatment providers, (2) she was able to interact with child protective services and counselors related to her grandchildren and arrange for them to move in with her, (3) she has been able to adequately take care of her three grandchildren, all of whom experience social-emotional issues, and (4) she reported to her provider that she was laid off from her job and received significant unemployment benefits.  AT 18.

I note that the ALJ has at least facially articulated rationales related to her assessment of the two relevant factors of supportability and consistency, and plaintiff does not appear to challenge that fact.  Rather, she argues that the reasons the ALJ provided to support her consistency

14

analysis are insufficient.  I first point out, that although plaintiff frames the ALJ's finding as a rejection of the moderate-to-marked limitations in Dr. Valencia-Payne's opinion, that characterization is mildly inaccurate.  Rather than rejecting the moderate-to-marked limitations, the ALJ found that no more than moderate restrictions are supported in those areas.  She therefore accepted the opinion by adopting limitations to accommodate the moderate restrictions in the various areas but found that any escalation to marked restrictions in those same areas is not warranted.  It is therefore in that context, rather than that of an outright rejection of any degree of limitation in the relevant areas, that the ALJ's findings and rationale must be assessed.

As to the ALJ's notation that greater-than-moderate restrictions in regulating emotions, controlling behavior, maintaining wellbeing, and interacting with others are not supported in light of her ability to communicate with treatment providers despite being tearful and of evidence that she was able to interact with child protective services and manage counseling for her grandchildren, I find these to be valid reasons, even though the record does admittedly contain other evidence that plaintiff experienced difficulties as a result of her mental health symptoms.  As will be discussed below, the ALJ's reliance on evidence of plaintiff's ability to

communicate with providers despite sometimes being emotional or tearful
is corroborated by the prior administrative medical findings from the state
agency sources, who found that plaintiff could perform the requisite tasks of
work with some limitation despite her emotional symptoms.  AT 72-73, 92-
93.  Further, the medical record corroborates that, although plaintiff clearly
was experiencing significant symptoms of anxiety and depression as
evidenced in the treatment notes, particularly from later 2019 and early
2020 when she was continuing to work part-time despite ongoing grief and
PTSD symptoms over the death of her son and father,[6] it is also true that
the medical records from February 2020 and after document that plaintiff
obtained custody of her three grandchildren, was searching for an
apartment for them all to live in, was directing the children's homeschooling
because of the COVID-19 pandemic, and was setting up counseling for the
two older grandchildren through their school, all with little help from her own
adult children.  AT 490, 494, 500, 504, 506, 524.  In May of 2020, she
reported that she had just returned home after an eight-hour drive from
Virginia where she was visiting her boyfriend, that she felt alone in her
responsibility for her grandchildren, and that she was getting little sleep, but

---

[6]      I note that while those treatment notes are from prior to the alleged onset date of
May 24, 2020, they are nonetheless relevant to her application for benefits.

that she was "able to pull herself together and get things done."  AT 506.
The records from the remainder of 2020 and 2021 reflect that plaintiff
continued to care for her grandchildren, although it admittedly caused her
significant stress and emotional difficulties and she reported in October
2020 that she was feeling overwhelmed by all of her responsibilities,
especially as she was homeschooling the grandchildren again.  AT 376,
512, 516, 522, 532, 536, 556, 572.  While the treatment records therefore
do document significant ongoing mental symptoms, and notwithstanding
the fact that another adjudicator might have interpreted the evidence in the
different manner if tasked with deciding plaintiff's claim in the first instance,
I am unable say that the ALJ was unreasonable in interpreting the evidence
related to plaintiff's ability to care for her three grandchildren after assuming
custody, which included homeschooling them, managing their emotional
needs and care, and interacting with child services and the school, as
being indicative of an ability to regulate her emotions and interact with
others to an extent greater than believed by the one-time consultative
examiner.

      That notwithstanding, I am less convinced that plaintiff's ability to take
care of her grandchildren, and particularly the ability to set up counseling
for them and move their residence, reasonably supports a conclusion that

she is no more than moderately limited in her ability to sustain
concentration, perform a task at a consistent pace, and sustain an ordinary
routine or regular attendance.  The record does not disclose details
regarding what steps plaintiff took to arrange for counseling or moving, how
long it took her to arrange such things, whether those tasks were subject to
any kind of timeline or routine, or any other relevant information.  Similarly,
to the extent plaintiff homeschooled her grandchildren at times as reflected
in the record, there is also little to no information as to how much
involvement by her that oversight actually entailed.  Without information to
suggest at least that the specific activities the ALJ highlights were
performed on any ongoing basis, they do not seem to have a logical
connection to the specific marked limitations the ALJ is attempting to refute.

This does not mean, however, that the ALJ's consistency analysis as
to those limitations is inherently unsupported.  Rather, the ALJ's decision
must be read as a whole.  In this case, there are other reasons that can be
gleaned from the ALJ's decision that support the ALJ's assessment of the
consistency analysis as to Dr. Valencia-Payne's opinion.  Notably, the ALJ
pointed to the fact that plaintiff has participated in mental health therapy on
a regular basis during the relevant period, and that her complaints to her
therapist during that time have generally revolved around grief and

18

caregiving, particularly relative to her having to care for her grandchildren with little help from her family, and acknowledged medical records showing that although on occasion plaintiff had a depressed and anxious mood and exhibited emotional distress, other findings regarding such factors as thought process, judgment, insight, attention, concentration, and memory were generally intact.  AT 17.  The ALJ also highlighted plaintiff's reported activities of daily living, which included taking care of her grandchildren and a dog with assistance from family members, some chores including cooking, laundry, driving, brief shopping, and doing errands for her mother, and taking long car rides including one solo trip to Virginia.  AT 17.  Further, as will be discussed below, although the ALJ did not specifically state that she found the prior administrative medical findings of the state agency sources to be inconsistent with Dr. Valencia-Payne's medical source statement to the extent it outlined the relevant marked restrictions regarding concentration, pace and routine or attendance, such finding can be reasonably inferred from both those sources' findings and the ALJ's conclusion that their findings are persuasive.  While there is certainly medical evidence reflecting that plaintiff was experiencing significant mental health symptoms that another adjudicator might have interpreted differently, reading the ALJ's decision as a whole, I cannot say that the

ALJ's conclusion regarding the marked limitations opined by Dr. Valencia-Payne is unreasonable or unsupported by substantial evidence.[7]

I further note that the ALJ found the prior administrative medical findings from the nonexamining state agency sources to be persuasive.  AT 18.  Such finding not only provides support for the RFC finding overall, but also serves as an additional reason, albeit not explicitly connected to such finding by the ALJ, as to why the ALJ's rejection of any greater-than-moderate restrictions was consistent with the other evidence in the record. Dr. P. Fernandez opined on November 10, 2020, that plaintiff is able to understand and remember detailed but not complex instructions and procedures, can sustain a normal workday and workweek despite some distractibility, would be better served working in an environment that limits her interaction with others to brief and superficial contact due to difficulties

---

[7]    I note also that although plaintiff argues, based on her hearing testimony, that her past employment was terminated because of her inability to complete tasks or work full-time as a result of her mental health symptoms, there is also evidentiary support for the ALJ's conclusion that plaintiff was laid off from that job and subsequently received unemployment benefits.  AT 194-95 (documented receipt of unemployment benefits related to the relevant employer); 512 (reporting to her medical provider that she was laid off yesterday).  I further note that plaintiff's hearing testimony related to the relevant job, which ended in May 2020, indicates that she returned to work when allowed under the COVID-19 regulations and requested time off upon her return but was told she was ineligible for leave, and as a result was laid off.  AT 37.  Although plaintiff did report difficulty performing the work in that job prior to that time, and with working full-time, her testimony does not support the conclusion that she was fired from this job for performance reasons.  AT 40-41.

interacting with others, and can adapt to basic changes in a routine work setting and use appropriate judgment to make work-related decisions.  AT 72-73.  Dr. L. Hoffman affirmed this finding on March 5, 2021.  AT 92-93. Plaintiff does not generally challenge the ALJ's reliance on those opinions directly, with a few exceptions that will be noted below where plaintiff believes the ALJ failed to account for greater limitations contained within the sources' opinions.

I note first, in response to plaintiff's argument, that the fact that the state agency sources deemed Dr. Valencia-Payne's opinion to be supported and consistent with other medical evidence in the file does not imply that the ALJ was required to also find so in order to rely on the conclusions of the state agency sources.  It is particularly notable that, despite finding that opinion to be consistent with the evidence, the state agency sources' prior administrative findings seemingly either did not interpret that opinion to be as restrictive in specific functional terms as plaintiff argues it is, or they tempered their reliance in light of the other evidence in the record.  Further, plaintiff notes that the state agency sources found that she has limitations in areas such as maintaining concentration and attention, avoiding distraction, completing a normal workday or work week, performing at a consistent pace, and abstaining

21

from behavioral extremes, and argues that the fact that those sources found she could sustain a routine and make basic work decisions does not constitute a finding that she can carry out these activities on a consistent basis.  Dkt. No. 13, at 14.  However, plaintiff points to nothing in the sources' reports to suggest these limitations were not intended to represent a statement regarding her typical functioning on a consistent, sustained basis.  Indeed, this argument appears to be directly contradicted by the sources' explicit notation that, although plaintiff experiences symptoms such as distractibility, she is able to sustain a normal workday and workweek.  Those sources therefore appeared to have explicitly contemplated how plaintiff's fluctuating psychiatric symptoms might affect her work, but ultimately concluded she can nonetheless still perform work despite the presence of those symptoms.  Plaintiff's conclusory argument to the contrary is insufficient to raise a valid challenge.

Plaintiff also argues that the ALJ's findings do not account for even the portions of the opinions which she purported to accept.  Specifically, plaintiff argues that the ALJ's RFC finding for occasional contact with supervisors and coworkers but no contact with the public is not consistent with even the state agency sources' prior administrative medical findings because those sources opined that she is limited to no more than brief and

superficial contact with others – a finding which the ALJ does not account for with the limitation for occasional interaction – and did not make any distinction between coworkers, supervisors and the public.  Dkt. No. 13, at 12-13.  She acknowledges that the ALJ need not adopt limitations in an opinion verbatim but argues that the ALJ here failed to explain her reasoning for making such a departure from an opinion she claimed to have relied upon.  *Id.*  To the extent that plaintiff argues that the ALJ erred merely by finding different levels of contact warranted for the public when compared with coworkers and supervisors despite the fact the medical sources make no such distinction, I acknowledge that, in her decision, the ALJ did not provide a specific explanation for this choice.  However, it is not clear to me that such fact alone would cause harm to plaintiff.  Notably, the ALJ relied upon the social limitations opined by the state agency sources, and, to the extent of a moderate restriction, those of Dr. Valencia-Payne, none of which indicated that plaintiff was completely unable to interact with others.  To the extent the opinion evidence does not support a need for no contact with others, whether supervisors, coworkers, or the public, the ALJ's choice to limit plaintiff to no contact with the public is more restrictive than supported by the opinion evidence, and thus has not caused any harm to plaintiff.  Accordingly, the fact that the ALJ introduced different levels of

restriction between these groups of people without explaining the basis for doing so does not provide a basis for remand.

To the extent that plaintiff argues that the ALJ did not explain how a limitation for brief and superficial contact would equate to an ability to occasionally interact with coworkers and supervisors, I agree that it is not a perfect translation of the state agency sources' finding. However, as both parties appear to acknowledge, the ALJ is not required to adopt any source's opined limitations verbatim. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (noting that the ALJ's conclusion need not "perfectly correspond" with any medical opinion because she is "entitled to weigh all of the evidence available to make an RFC finding that is consistent with the record as a whole"). "Occasional" is defined by agency policy as "occurring from very little up to one-third of the time." Social Security Ruling ("SSR") 83-10. I note that the argument made by plaintiff – that a limitation to brief and superficial contact is not equivalent to occasional contact – has been rejected by at least one district court in this circuit, although I acknowledge that the view held by that court is not a universally accepted conclusion. *Compare Ward v. Comm'r of Soc. Sec.*, 18-CV-1317, 2020 WL 3035850, at *3 (W.D.N.Y. June 5, 2020) (collecting cases) *with Jackson v. Comm'r of Soc. Sec.*, 16-CV-6183, 2019 WL 7283518, at *8 (E.D.N.Y. Dec. 27, 2019).

Moreover, while the state agency sources did opine a limitation to brief and

superficial contact, their opinion was not the only opinion on which the ALJ

relied.  Rather, he found that Dr. Valencia-Payne's opinion was also

persuasive to the extent it opined a moderate limitation in, as relevant here,

plaintiff's ability to interact with others.  A moderate limitation in interaction

can be reasonably interpreted as an ability to occasionally interact.  *See*

*Jodi M. v. Comm'r of Soc. Sec.*, 20-CV-0650, 2021 WL 1428910, at *9

(N.D.N.Y. Apr. 15, 2021) (Baxter, M.J.) (finding that the ALJ

accommodated for a moderate limitation in relating to and interacting with

others by limiting the plaintiff to occasional contact or interaction with

others); *Natrella v. Comm'r of Soc. Sec.*, 19-CV-1237, 2020 WL 1041067,

at *6 (S.D.N.Y. Mar. 3, 2020) (holding that an RFC limiting the claimant to

only occasional interaction reflected "at least a moderate, if not greater,

limitation in [claimant's] ability to interact with others").  Although the ALJ

certainly did not explain in any definite way that he adopted the limitation in

Dr. Valencia-Payne's opinion over the slightly more restrictive one

contained in the state agency sources' prior administrative medical

findings, that position can be gleaned from the ALJ's decision as a whole.

Specifically, the ALJ explicitly found that Dr. Valencia-Payne's opinion was

consistent with the record only to the extent it expressed moderate

limitations.  However, the state agency physicians made no such qualification.  As plaintiff herself pointed out in her brief, the state agency sources found Dr. Valencia-Payne's opinion to be consistent with the evidence, and seem to have adopted the full moderate-to-marked extent of her opined social restrictions.  However, because the ALJ explicitly found only moderate limitations were warranted, her reason for including a limitation for occasional interaction, rather than the more limiting brief or superficial interaction limitation, are apparent from a logical reading of her overall analysis of the opinion evidence in this case.  As a result, I do not find any error in the ALJ's assessment of plaintiff's social limitations.

Plaintiff further argues that it is unclear from where the ALJ drew the limitation for goal-oriented, as opposed to production-rate pace, work given that neither the state agency sources nor the consultative examiner discerned any such limitation.  Dkt. No. 13, at 13-14.  However, it is not entirely clear what greater limitation plaintiff is arguing should have been adopted instead to accommodate the essentially moderate restrictions the ALJ found to be warranted based on both the prior administrative medical determinations of the state agency sources and the opinion of Dr. Valencia-Payne.  This limitation appears to reasonably address the opined moderate limitation in the ability to sustain concentration and perform a task at a

consistent pace, and also appears consistent with plaintiff's own testimony regarding having difficulty performing certain tasks within an allotted amount of time.  AT 40-41.  Because plaintiff has not elaborated on what greater limitation the ALJ should have included based on the remainder of the findings, I find no ascertainable error in the ALJ's inclusion of such limitations, which is reasonably traceable to the opinion evidence on which she relied.

For all of the above reasons, I find the ALJ's findings related to the opinion of Dr. Valencia-Payne, the prior administrative medical findings of the state agency sources, and the RFC finding in general, to be supported by substantial evidence.  I therefore recommend that the Commissioner's decision be affirmed.

IV.    <u>SUMMARY AND RECOMMENDATION</u>

After considering the record as a whole and the issues raised by the plaintiff in support of her challenge to the Commissioner's determination, I recommend a finding that the determination resulted from the application of proper legal principles and is supported by substantial evidence. Accordingly, it is hereby respectfully

RECOMMENDED that the Commissioner's decision be AFFIRMED,

defendant's motion for judgment on the pleadings (Dkt. No. 17) be

GRANTED, plaintiff's motion for judgment on the pleadings (Dkt. No. 13) be

DENIED, and plaintiff's complaint be DISMISSED.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days

within which to file written objections to the foregoing report.  Such

objections shall be filed with the Clerk of the Court.  <u>FAILURE TO OBJECT</u>

<u>TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE</u>

<u>APPELLATE REVIEW</u>. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993)

(citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir.

1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated:    October 17, 2023
          Syracuse, NY

_____
DAVID E. PEEBLES
U.S. Magistrate Judge